## Estate of Jonathan Kelchner. Appeal of A. J. Marcus & Co.

*Execution—Agreement to postpone prior lien—Fraud.*

One creditor of a failing debtor is not bound to take care of another; if a second execution creditor secures a position without litigation which the law would have given after a contest such action cannot, therefore, be a fraud upon the third creditor.

It follows that, where a second execution creditor induces a first exe-cution creditor, whose claim was fraudulent as to junior creditors, to postpone his lien, the fund is properly distributable to such second exe-cution.

Argued Oct. 25, 1899. Appeal, No. 114, Oct. T., 1899, by Marcus & Co., from decree of C. P. Blair Co., Oct. T., 1898, No. 10, in appropriating moneys arising from the sale of the personal property of Jonathan Kelchner. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEE-BER, JJ. Affirmed. Per Curiam.

Exceptions to auditor's report. Before BELL, P. J.

It appears from the auditor's report that Jonathan Kelchner,

pending alleged insolvency, confessed certain judgments to his wife and that execution issued thereon. Subsequently on June 28, Frank & Bruckner and the New York Counter Company, both creditors of Kelchner, issued attachments under the act of 1869, setting out that the judgments to the wife were fraudulent and intended to hinder, delay and defraud creditors. A rule was granted to pay the moneys into court. By arrangement between the wife and the above attaching creditors judgments were confessed to them and executions issued thereon, the wife, in a consideration of a sum of money paid her waiving the priority of her levy. On June 29, Kelchner gave judgment notes to Marcus & Company and execution was issued thereon on June 30. Kelchner's property was sold on the several executions. An auditor appointed to distribute the funds arising from the sale awarded the sum in proportion to Frank & Bruckner and the New York Counter Company. The judg-. ment of Marcus & Company was not reached in the distribution, exceptions were filed to the auditor's report, which were dismissed and Marcus & Company appealed.

*Errors assigned* among others were (4) in not appropriating the fund in the hands of the sheriff, after payment of costs, to A. J. Marcus & Company. (5) In not finding that there was fraud in the Lillie Kelchner judgments; that the fraud was known to Frank & Bruckner and the New York Counter Company; that their purchase of rights under said judgments was fraudulent and void, and that the Frank & Bruckner and the New York Counter Company judgments were satisfied by the sheriff sale; and that the money must be awarded to the Lillie Kelchner writs; and that they being fraudulent, the money must go to A. J. Marcus & Company.

*Alonzo P. MacLeod*, with him *W. B. Manley*, for appellant.— " The only question," as the auditor finds it, " would be whether the waiver of priority from Lillie Kelchner was procured for the purpose of hindering or delaying or defrauding other creditors of Jonathan Kelchner."

The reasoning of the auditor is in direct contravention of the reasoning and language used by Justice LOWRIE, in Bunn, Raguel & Co. v. Ahl, 29 Pa. 390.

And in Rogers v. Hall, 4 Watts, 359, it is decided: "That the least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all."

*H. A. Davis*, for appellees.—It is not the effect of a transaction, but the intent, which makes it fraudulent or innocent: Werner v. Zierfuss, 162 Pa. 360.

PER CURIAM, November 20, 1899:

The question raised on this appeal may be stated as follows: An execution creditor agrees with a subsequent execution creditor that upon distribution of the fund arising from the sheriff's sale about to be made, the latter shall have priority. At this time these were the only creditors who had executions in the sheriff's hands. Is it a valid reason for postponing the lien of the latter's execution in favor of the lien of a third execution creditor, that the judgment upon which the first execution issued was fraudulent as to creditors, and the second execution creditor knew it at the time the above agreement was made? We do not see how it can be. "He who has the advantage, whether he gets it by the preference of the debtor, or by his own superior vigilance, is entitled to what he wins, provided he takes no more than his honest due:" Chief Justice BLACK in Covanhovan v. Hart, 21 Pa. 495. By his superior vigilance, or if you choose, by the preference of the debtor, the second creditor had priority over the third; and when he subsequently compelled or induced the first to get out of his way, he obtained no advantage in the distribution which the law would not have given him if he had contested the validity of the prior execution and had established its fraudulent character. But he was not bound to contest it for the benefit of creditors coming after him. If he had contested it the third creditor would have been in no better position than he is in now. The second creditor did not step into the shoes of the first creditor nor make himself a party to her fraud nor do anything to make it successful as against other creditors. He simply induced her to step out of his way and not to assert her prima facie priority as against him. This he had a right to do, without consulting other creditors subsequently issuing executions and informing them of the arrangement. "One creditor of a failing debtor is not bound to take

care of another: " Covanhovan v. Hart, supra.   That the second
creditor secured a position without litigation which the law
would have given him after a contest cannot, therefore, be a
fraud upon the third creditor.   It follows that no error was
committed in awarding the fund to the second execution cred-
itors, even though the first execution was fraudulent.   All the
assignments of error are overruled.

The decree is affirmed, and the appeal dismissed at the costs
of the appellants.