## Getz et al. v. Harley et ux.

*Wright, Mauck, Hawes & Spencer,* for plaintiffs.

*Fox, Fox, Honeyman & Schermerhorn,* for defendants.

CORSON, J., July 21, 1949.—Upon motion of defendants, John B. Harley and Emma C. Harley, his wife, a rule has been granted upon plaintiffs, Stanley M. Getz and T. H. Getz, trading as Stanley M. Getz & Company, to show cause why an attachment issued on January 25, 1949, under the Fraudulent Debtor's Attachment Act of March 17, 1869, P. L. 8, 12 PS §2711 et seq., should not be dissolved.

On March 25, 1948, John B. Harley signed a card appointing plaintiff, Stanley M. Getz & Company, the sole and exclusive agent for the sale of the Harley residence at 7918 Heather Road, Elkins Park, Pa. Realtor Getz advertised the property and listed it with the Philadelphia Real Estate Board. Although the exclusive agency was later terminated, according to testimony taken at the time depositions were made in sup-

port of the attachment, an employe of the Getz Company named Richman continued to show clients through the Harley home. One of these clients, Morris Sussman, is reputed to have offered $20,000 for 7918 Heather Road. An agreement of sale was drawn up almost immediately by plaintiff realtors, but the Harleys turned down the Sussman offer.

Later on, defendants entered into an agreement of sale with Martin R. Freedman, of the Esquire Realty Company, and conveyed their Heather Road property to him by deed of February 11, 1949. Plaintiffs allege that Freedman was acting as agent for Morris Sussman and since Sussman was first procured by them, and as they claim to be the moving and efficient cause of said sale, they say they are entitled to receive a commission of $1,050 from defendants, John and Emma Harley.

On January 24, 1949, Getz & Company præciped the prothonotary for a writ of attachment under the Fraudulent Debtor's Attachment Act of March 17, 1869, saying that defendants have property which they intend to remove from jurisdiction of the court and will not pay a debt that is due. The writ was issued, following which a petition was made to dissolve the attachment and a rule to show cause why the attachment should not be dissolved was granted upon plaintiffs.

The attachment made here under the Act of March 17, 1869, P. L. 8, should be dissolved. An attachment is issued under the act of 1869 because it is deemed necessary to protect the creditor from frauds of the debtor. It is a means of preventing the debtor from removing his property from its location within the jurisdiction or otherwise concealing in a way that it would not be available to satisfy claims against the debtor. To justify so extraordinary a remedy as attaching the goods in this manner, it should be clear that the debtor has

comported himself in such a fashion that he is defrauding the one to whom he owes money.

The language of section 1 of the Act of 1869, which creates this remedy for defrauded creditors, expressly limits issuance of attachments:

"(1) . . . and that said party defendant is about to remove . . . their property out of the jurisdiction of the court in which said attachment is applied for, with intent to defraud . . . their creditors, or that (2) said party defendant has property, . . . which . . . they fraudulently conceal, or that said party defendant has or have assigned, (3) disposed of or removed, or is about to assign, dispose of or remove any such property . . . with the intent to defraud . . . their creditors, (4) or that . . . they fraudulently contracted the debt or incurred the obligation for which such claim is made."

Prime requisite for an attachment under the Act of March 17, 1869, P. L. 8, sec. 1, is that there be fraud. The burden of establishing fraud is upon plaintiff who seeks to benefit by issuance of the writ of attachment: Holland v. Atzerodt, 1 Walker 237 (1880) ; Lycoming Rubber Co. et al. v. Evans & Bahny, 8 Luz. 35 (1895) ; Biddle v. Black, 99 Pa. 380 (1882).

"The attachment, in advance of judgment on a disputed account, being an extraordinary process, the burden was on plaintiff to sustain it by clear and convincing proof that defendant (a) fraudulently contracted the debt, and (b) was about to assign, dispose of and conceal his property, with intent to defraud plaintiff": Musser v. Henderson, 65 Pitts. L. J. 510, 512 (1917).

The court, in Corse v. Wittendorfer, 34 Del. Co. 366, 370 (1946), quotes from 10 Standard Pa. Practice 478: " '. . . the burden is on the plaintiff to prove the jurisdictional fact of fraud as contemplated by the Statute to sustain the issuance of the attachment. Accordingly,

the attachment will be dissolved where the plaintiff's affidavit is general in its terms, or is written in the words of the Statute, or where the defendant's affidavit denies the charge in general terms, unless the plaintiff by evidence establishes his charge of fraud to the satisfaction of the court.' "

Stanley M. Getz & Company, plaintiffs herein, offer no proof of any of the four forms of fraud prescribed by the Act of March 17, 1869, P. L. 8. To sustain the issuance of the attachment the only argument which they raised concerning the fraud was that defendants were moving to Philadelphia without informing Getz & Company.

Moving out of the jurisdiction per se does not show intent to defraud. Defendant was about to move from Union City, Pa., to the Dakotas in Sowers v. Leiby, 4 Pa. C. C. 223, 226 (1887) :

"If the purpose of a change of residence is an honest one, the intent to defraud is not to be legally presumed from the mere fact that the debtor is about to remove his goods. The intent may be inferred from the circumstances, and it is the intent of removal and not its effect which must determine whether it is lawful."

There is no fraud indicated by the moving of the Harleys from Elkins Park to Philadelphia. The distance involved is but a few miles. If defendants were seeking to find a haven from their creditors it is not unlikely they would have traveled a greater distance than across a county line into the neighboring County of Philadelphia.

The circumstances of the change in residence tend to refute that there was any fraud. Defendants did not decide to move in order to avoid paying. Their home had been up for sale for almost a year. If a sale was made the Harleys would naturally have to go somewhere to live. The silence of the Harleys is of no moment. Admittedly the exclusive agency had been ter-

minated. Hence, there was no duty owed to inform Getz & Company of the sale to Freedman. Nor should John and Emma Harley be required to notify Getz & Company of their new address:

"We are not permitted to assign a bad motive to an act which is not wrong either in itself or in its necessary consequences": Covanhovan v. Hart, 21 Pa. 495, 501 (1853) ; Werner v. Zierfuss, 162 Pa. 360, 366 (1894).

The phraseology of the Act of March 17, 1869, P. L. 8, indicates that it is the moving of the property out of the jurisdiction plus an intent to defraud creditors which is necessary for the attachment. Defendants have sold their property located within the jurisdiction of this court and purchased property in another jurisdiction and have moved there. There is no evidence that this moving was done with intent to defraud or that intent to defraud can be found in the act of moving.

While an attachment under the Act of March 17, 1869, P. L. 8, will lie upon demand of unliquidated damages for breach of contract; Rauch & Co. v. Good, 1 Legal Chronicle 51 (1873) ; it will not be sustained where debt was not due when the writ was issued: Coaks v. White et al., 11 W. N. C. 271 (1882) ; George F. Jones & Co. v. Brown, 167 Pa. 395 (1895).

The Harleys were not indebted to Getz & Company at the time the writ was issued on January 24, 1949. This is so because there had not apparently been a sale to the client Sussman on or before January 24th. The only evidence presented about a buyer of 7918 Heather Road was the transaction with Martin Freedman. Settlement with Freedman was not made until February 11, 1949, about 15 days after the writ had been issued. Therefore, in the words of the Act of 1869, defendants would not be "justly indebted to him, her, or them, in a sum exceeding one hundred dollars."

In dissolving the attachment we do in no way pass on merits of the claim for commission: Locey v. Sterling Motor Truck Company of Pittsburgh, 102 Pa. Superior Ct. 148 (1931).

"An attachment under the Act of 1869, as was observed in Harbert v. Gormley, 115 Pa. 237, 'is of a hybrid character. It differs little from an ordinary summons except that it has a clause of attachment engrafted thereon, by means of which the creditor may, in certain cases, seize the property of a fraudulent debtor before he can dispose of it, and before a judgment is obtained against him.' If the attachment is dissolved by the court the suit still goes on; the plaintiff may recover his judgment against the defendant, but he has lost his grasp or lien on the particular property attached": Walls v. Campbell, Walls v. Boteler, 125 Pa. 346, 351 (1889).

And now, July 21, 1949, the rule to show cause is made absolute and the attachment dissolved.