## Lake Shore Banking Company el al. *versus* Fuller, Assignee.

1. The mere confession of judgment to a bona fide creditor, by a debtor, on the eve of making a general assignment for the benefit of creditors, is not invalid as an act done to hinder and delay creditors.

2. The Act of April 17th, 1843 (P. L. 273), simply prohibits preference *in* assignments; a preference given by a confession of judgment, made prior to the assignment and while the debtor had dominion over his property, is not invalidated from the fact that it was given to avoid the provisions of said Act.

3. The intention of a debtor, unexpressed to the creditor, to give him a preference at the time he was contemplating a general assignment, does not operate to defeat such preference.

4. In an issue framed to try the validity of judgments confessed as above, the court below charged that if, at or before the giving of the judgment notes, the debtor had determined to make an assignment for the benefit of creditors and to give certain creditors a preference, and by way of effectuating such preference as part of the assignment, with the intent and for the purpose of avoiding the law forbidding preferences, executed the notes, procured them to be entered and execution to be issued on them without the knowledge of said creditors, this would be a fraud under the Act of 1843, forbidding preferences to debtors :

*Held,* that this was error; the Act of 1843 only prohibits preferences *in* assignments, and, so long as the debtor had dominion over his property, he could prefer such bona fide creditors as he chose.

5. The Act of April 17th, 1843 (P.L. 273), and the statute of 13 Elizabeth, distinguished. Mellon's Appeal, 1 Grant's Cases, 212, followed.

6. The effect of preferences, actually contained in an assignment is, that they inure to the benefit of all creditors in proportion to their respective demands.

May 14th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *McKean county :* Of July Term 1885, No. 48.

Feigned issue, wherein J. M. Fuller, Assignee of J. W. Humphrey individually, and of J. W. Humphrey and A. A. Aspinwall, trading as J. W. Humphrey and Company, was plaintiff, and the Lake Shore Banking Company, Merchants' National Bank of Dunkirk, New York, the First National Bank of Franklinville, New York, the State Bank of Randolph, New York, and F. A. Newell were defendants.

The material facts of the case were as follows : J. W. Humphrey & Co. were dealers in what is called " oil well supplies," which consist of engines and other machinery and tools used in putting down and operating oil wells.    They had stores at Bradford and Clarendon, in the counties of McKean and Warren, Pennsylvania, and at Richburg and Bolivar, in the county of Allegany, New York.    The firm was composed of J. W. Humphrey and A. A. Aspinwall, doing business as J. W. Humphrey & Co.    J. W. Humphrey resided at Bradford and Aspinwall resided at Corry, Pennsylvania.    On January 19th, 1883, the said firm, having become embarrassed, confessed judgments by a series of judgment notes, dated January 16th, 1883, to W. O. Wright, Dow & Co., Lake Shore Banking Co., Merchants' National Bank of Dunkirk, First National Bank of Franklinville, the State Bank of Randolph and F. A. Newell, each of whom held notes which they had discounted for J. W. Humphrey & Co. on their endorsement, averaging in amount in round numbers from ten to seventy thousand dollars. These judgments were confessed without the knowledge of the parties in whose favor they were made and executions were placed in the hands of the sheriff of McKean county on the same day, upon which he seized all the property of Humphrey and J. W. Humphrey & Co., in said county.    On the same day these judgments were confessed, viz., January 19th, 1883.    J. W. Humphrey and wife executed a letter of attorney at Bradford to A. A. Aspinwall authorizing him to make an assignment for the benefit of creditors.    On January 20th, Aspinwall

executed and delivered to Henry Weiskettle a general deed of assignment in trust for the benefit of the creditors of J. W. Humphrey and J. W. Humphrey & Co. By this assignment a large number of creditors were preferred, among others were all the defendants in this issue.

This deed of assignment was executed and delivered at Olean, N. Y., first recorded in Allegany county, New York, where bond and inventories were duly approved and filed as provided by the laws of New York, and afterwards the deed was recorded in McKeen county, Pa. On April 3rd, 1883, on petition of Morris, Tasker & Co., et al., creditors of J. W. Humphrey & Co., representing, *inter alia*, that Henry Weiskettle was irresponsible and had neither filed bond, or inventories in this state, and that he was mismanaging and neglecting said trust, the Court of Common Pleas of McKean county removed said Weiskettle and appointed J. M. Fuller in his place. Weiskettle appealed to the Supreme Court from the order removing him, but his appeal was dismissed. (See Weiskettle's Appeal, 7 Outerbridge, 522.)

On the same day that Weiskettle was removed, the court, on petition of J. M. Fuller, assignee, Morris, Tasker & Co., et al., general creditors of J. W. Humphrey & Co., made the following order

"Now, April 3, 1883, on consideration of the petition of creditors and the assignee above named and the depositions and evidence presented therewith, the court direct that a feigned issue be formed to be tried by a jury, in which J. M. Fuller, assignee, shall be plaintiff, and W. O. Wright and others shall be defendants, as set forth in the caption hereto, the counsel of the plaintiff to file a declaration in assumpsit as upon a wager, and the defendants to file a special plea in bar and with a joinder in the issue. The questions to be submitted are: First, whether the notes on which the defendants in this issue have entered judgment in the Common Pleas of McKean county against J. W. Humphrey and J. W. Humphrey & Co., were given to hinder, delay or defraud the general creditors of the said J. W. Humphrey and J. W. Humphrey & Co. Second, whether the notes were made or intended to be made as a part of the assignment for the benefit of creditors made on the 19th of January, 1883, and executed by J. W. Humphrey and J. W. Humphrey & Co. the 20th January, 1883, and to secure or cause preference thereby. The proceedings upon execution now issued to stay until the determination of this issue, the lien of *fi. fas.* to remain."

Subsequently W. O. Wright was allowed a separate action and Dow & Co. were allowed to withdraw from the case. The formal pleadings having been filed, the issues, as to the

other defendants, were tried before BROWN, P. J. of 37th judicial district.

At the trial, plaintiff offered in evidence the judgments of Dow & Co. against J. W. Humphrey & Co., and of W. O. Wright against the same party as part of the same transaction with the other judgments and as throwing light on the character of the transaction, to be followed by evidence that all these notes were executed at the same time, in the absence of the plaintiffs and delivered by the defendants to the defendants' attorney, antedated.    Objected to for the reason that Dow & Co. and W. O. Wright were not parties to this issue. Objection overruled and evidence admitted.    Exception. (First, second and sixth assignments of error.)    Plaintiff further offered to show that J. W. Humphrey & Co. were largely indebted to other persons than defendants in the issue at the time the notes were given on which judgments were entered and that the notes given were antedated so as to make them due with a view of giving these parties a preference over the general creditors.    Objected to.    Objection overruled and evidence admitted.    Exception.    (Third and fourth assignments of error.)    Plaintiff further offered to prove that J. W. Humphrey and Weiskettle were residents of Pennsylvania at the time of the assignment.    Objected to as irrelevant. Objection overruled and evidence admitted. Exception. (Fifth and seventh assignments of error.)    Plaintiff further offered to prove by Wieskettle, that Humphrey had told Weiskettle two weeks before the notes were given,that the firm of J. W. Humphrey & Co. was insolvent and that arrangements were being made at that time to prefer the defendants in this issue. Objected to.    Objection overruled and evidence admitted. Exception.    (Eighth and ninth assignments of error.)

The defendants showed that the reason for antedating the notes was to make them then due; the printed blanks which were used making it more convenient to adopt that method than by erasures and interlineations, which would have been necessary had the notes been dated January 19th.

Counsel for defendants requested the court to charge, *inter alia*, as follows:

3. " That if the plaintiffs acquiesced in or ratified the act of the attorney who received the notes from the defendants in entering judgment thereon, after they became aware of what had been done, the judgments are as valid and obligatory as if the plaintiffs themselves or their authorized attorney had taken them and entered the judgments.    Their failure to repudiate the transaction within a reasonable time, after the act of the attorney came to their knowledge, operates as an acquiescence or ratification of the act, and is as effectual as a precedent authority."

*Answer.* " This point is answered fully, we think, in the general charge, and substantially in the negative." (Tenth assignment of error.) ·

4. " That while the defendants have dominion over their property they have the right to prefer any bona fide creditor, whether contingent or otherwise, by a judgment, mortgage, sale, or transfer of their property, for an adequate consideration, and those creditors thus preferred can hold the property so secured against an assignee for the benefit of creditors of the defendants claiming under the subsequent assignment."

*Answer.* " This point is affirmed, but qualified and explained in the general charge, and as qualified in the general charge in its application to the case on trial." (Eleventh assignment of error.)

5. " If the defendants in the judgments gave notes on which they were entered for a bona fide consideration, knowing of their insolvency, and in contemplation of the assignment for the benefit of their creditors and with the intent to prefer the plaintiffs in the judgments over their other creditors, the judgments are valid and not fraudulent, in case the plaintiffs therein had no knowledge of the contemplated assignment when the notes were given."

*Answer.* " This point is answered by reference to the general charge and in substance in the negative." (Twelfth assignment of error.)

The court, after stating the fact that if Humphrey & Co., with full knowledge of their insolvency, of their own motion and without any knowledge of the defendants in this issue, executed the notes and procured them to be entered of record and caused executions to be issued thereon, such judgments would not in law be regarded as given to hinder, delay and defraud the general creditors, charged as follows :

" But while we say this, we further say that by an Act of Assembly passed in 1843 it is provided that debtors, insolvent debtors, when they make an assignment of their property for the benefit of creditors, must impose no conditions, must make no reservation, and must make no preference of one creditor or set of creditors over others." (Fourteenth assignment of error.) · · · · · We say to you with some considerable hesitation, but which, so far as you are concerned, you are to take as the law of the case, that if Humphrey and Aspinwall had, at the time or before the giving of the judgment notes, determined to make an assignment for the benefit of creditors, and to give to the defendants in this issue, with others, a preference by way of effectuating such preference as part of the assignment, with the intent and for the purpose of avoiding the law forbidding preferences, executed the judgment

notes in question, procured them to be entered of record and procured execution to be issued thereon and without the knowledge of such action by the defendants to the issue until after the execution of the assignment by Humphrey & Aspinwall, then we say that the judgment notes were given in fraud of the Act of Assembly and that a subsequent approval or ratification of such doings by the defendants would not purge the transaction of its fraudulent character, and your verdict upon the question of whether the notes were given to hinder, delay or defraud the general creditors of J. W. Humphrey & Company ought to be in favor of the plaintiff, Fuller, who in this issue represents the general creditors." (Fifteenth assignment of error.)

Verdict for the plaintiff in both issues. The court thereupon entered a decree, declaring the judgments of the defendants void as against the assignee and enjoining them from proceeding against any of the assigned property. Defendants then took this writ assigning for error the admission of the testimony, the answers to the points and the portions of the charge as above noted.

*F. D. Reeves* and *R. Brown* (*S. F. Wilson, R. B. Stone* and *A. Leo Weil* with them), for plaintiffs in error.—The effect of executing the notes on the 19th and the issue of the execution was to prefer the plaintiffs in the judgments, and the proof of any other arrangements in reference to their preferment was irrelevant to the issue, that being to determine whether the notes themselves were given to delay, hinder or defraud the general creditors. The subsequent ratification by the judgment creditors of their debtors' act was equivalent to a precedent authority: Bredin *v.* Dubarry, 14 S. & R., 27; Kelsey *v.* Bank, 19 P. F. S., 429. The defendants had a right, while they had dominion over and control of their property, to pay or secure some of their creditors to the exclusion of others.

The knowledge of the debtor of his insolvency and his intention, at the time of his confessing a judgment to a bona fide creditor, to make an assignment, and his actual assignment afterwards, will not invalidate the judgment, even under the Act 16th April, 1849, unless the creditor participated in the wrongful intent of the debtor in giving it: Hutchinson *v.* McClure, 8 Harris, 63; Uhler *v.* Maulfair, 11 Harris, 484; York Co. Bank *v.* Carter, 2 Wr., 453; Wilson *v.* Berg, 7 Norris, 172; Walker *v.* Marine Bank, 2 Outerbridge, 578.

That portion of the charge recited in the fourteenth assignment, being given with considerable hesitation, and clothing the plaintiffs with the benefit of the doubt, is flatly opposed to

14 OUTERBRIDGE—11

the rules as stated in the cases above cited, and is directly in the teeth of Mellon's Appeal, 1 Grant, 212.

*N. B. Smiley* (*B. D. Hamlin* and *M. F. Elliott* with him), for defendant in error.

Plaintiffs in error claim that the only preference void under the Act of 1843 is one contained in the body of the paper called the assignment itself; that, although the intent to evade the laws as to the preference may be clear, yet it may be done, if another separate paper is executed for that purpose, although both are but one act and made at practically the same time. With this position we take issue and say it matters not what you may call the papers, nor in what forms they are drawn, or how many there may be; if they were all made about the same time, in pursuance of a previously arranged programme, to carry out one identical purpose, they are all one in law. And if the purpose of these various papers was to make a general assignment for the benefit of creditors, with preferences, contrary to law, such preferences are void, no difference what instruments are provided to carry out such preference : Blakey's Appeal, 7 Barr, 449.

We further say, that the case at bar is not within the rule laid down in the decision cited. Here the plaintiffs in error were expressly preferred in the assignment itself, for the same indebtedness for which judgment notes were given, about the time assignment was executed, and an effort was made to evade the law by executing the assignment in the state of New York. (See opinion of this court in Weiskettle's App., 7 Out., 522.) We contend that the judgment notes were given and intended, as mere instruments to enforce an unlawful preference. This the jury in the case have found to be the fact.

Mr. Justice GREEN delivered the opinion of the court, October 5th, 1885.

In 1848, in Blakey's Appeal, 7 Barr, 449, we held that judgments confessed to secure creditors are not such preferences as are avoided by the Act of 1843, although an assignment for creditors was intended and was shortly afterwards executed. COULTER, J., said : "Whilst a man retains dominion of his property he may encumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors by payment or transfer as he chooses."

In Uhler *v.* Maulfair, 11 Harr., 481, we said : "The principle is now too well settled to require further authority or argument, that so long as a debtor retains dominion over his property he may prefer one creditor to another and that such

preference is not fraudulent either in *law* or in *fact.*" The "unfortunate" case of Summer's Appeal, 4 Harr., 169, which held that the *scienter* of the defendant in the judgment as to his solvency or insolvency determined the validity or invalidity of the judgment as a preference, was overruled, as indeed had practically been done in Covanhovan *v.* Hart, 9 Harr., 495. In the latter case BLACK, C. J., said: "We are not permitted to assign a bad motive to an act which is not wrong either in itself or in its necessary consequences. A creditor is not acting wrongly when he receives payment or takes security for his debt, though he knows that other persons who have the same rights with himself may be less vigilant or less fortunate. The act being right no secret feeling can change its character. Indeed it may be said that the motive which results in proper action cannot be a bad one."

In York Co. Bank *v.* Carter, 2 Wr., 446, STRONG, J., speaking of the supposed applicability of the Statute of 13th Eliz. to a preference which in effect defeated other creditors, said: "There is, however, a distinction to be observed between the effect of a conveyance by a debtor in failing circumstances, made to pay one or more of his debts, and that intent to hinder and delay his other creditors against which the Statute of 13 Eliz. is aimed. An insolvent creditor may prefer one creditor to another by judgment or deed in any mode except by an assignment in trust. The *effect* of such preference may be to delay a creditor not preferred, in fact to prevent his obtaining payment at all; but if the motive, the honest intent was to pay the preferred debt the transaction is not invalidated by the statute. The statute of 13 Eliz. is aimed only at intended fraud. But the payment of a debt to one creditor is no fraud upon another creditor, no legal injury to him." In Wilson *v.* Berg, 7 Norr., 167, in pronouncing upon the effect of a judgment confessed a few days before making a general assignment, the present Chief Justice said: "It has however been held that the confession of a judgment to one creditor, just before making a general assignment, and with a view of preferring such creditor, did not defeat the prior lien which he thereby acquired to the prejudice of other creditors: Blakey's Appeal, 7 Barr., 449; Worman *v.* Wolfersberger's Executors, 7 Harr, 59. Hence, although the intention of the debtor was to remove from the operation of the subsequent assignment, a portion of his estate and his conduct produced that result, yet the validity of the assignment is not thereby impaired. The preference was not in and by the instrument through and by means of which the debtor surrendered to his creditors all dominion over his property. No law compels a debtor to make

an assignment for the benefit of his creditors. It permits him so to do, and directs as to its effect when done. Prior to such action, except as against a bankrupt law, he has an undoubted right to prefer any of his creditors, by a conveyance or transfer of property, or by a confession of judgment, although he may thereby hinder or forever prevent his other creditors from collecting their just demands."

This case rules first, that the mere confession of a judgment by a debtor just before making a general assignment is not invalid as an act done with intent to hinder and delay creditors; and second, that it is not giving a prohibited preference, contrary to the Act of 1843, which avoids preferences in general assignments, because it is not a preference contained in the assignment.

In Walker *v.* Marine Nat. Bank, 2 Out., 574, SHARSWOOD, C. J., said: " It is well settled that the confession of a judgment to a bona fide creditor, even though it have the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate. It was held by this court in Covanhovan *v.* Hart, 9 Harr., 495, that a conveyance of land by a debtor in failing circumstances to a creditor to pay an existing debt is not fraudulent although the parties contemplate that thereby the claims of other creditors will be defeated. Putting aside then, all the evidence in this case that the parties confessed the judgment with the very purpose and design of securing for it a priority over the judgment of other creditors impending and about to be entered, the sole question was this: Was the plaintiff a bona fide creditor of the firm Caughey, Walker & Co. at the time the judgment was confessed ? "

We have brought together the foregoing utterances of this court in order that it may be seen at a glance how we have heretofore regarded the chief facts which are relied upon to defeat the judgments obtained by the plaintiffs in error. The substance of the decisions quoted was recognized by the learned court below who charged the jury in accordance with their spirit and almost in their words. But the effect of this part of the charge was all lost by the remaining portion, in which he instructed the jury, though with " considerable hesitation," that if at or before the giving of the judgment notes in question, the debtors, Humphrey and Aspinwall, had determined to make an assignment for the benefit of creditors, and to give the plaintiffs in the judgments a preference and by way of effectuating such preference as part of the assignment, with the intent and for the purpose of avoiding the law forbidding preferences, executed the notes in question, procured them to be entered and executions to be issued on them without the

knowledge of the plaintiffs in the judgments, this would be a fraud upon the Act of 1843 forbidding preferences in assignments. Reduced to its simple elements this ruling means, as we understand it, that if a debtor who is about to make an assignment, confesses a judgment to a bona fide creditor for the purpose of giving him a preference, such judgment is a fraudulent preference under the Act of 1843. We do not think this is the law of this Commonwealth and therefore we cannot assent to it. We are not referred to a single case by the learned counsel for the defendants in error in which this doctrine has been held, and we are not conscious of any except the "unfortunate" one of Summer's Appeal, 4 Harr., 169. But that case was repudiated and overruled by this court so many years ago that it is of no authority whatever and has long been so regarded by the bench and bar of the state. The judgments in this case were confessed and entered and executions issued upon them one day before the execution of the deed of assignment. They were no part of the assignment but entirely independent of it. They were not delivered to the same persons; they were not executed at the same time; the rights they conferred had become completely vested and were enforced by execution process one whole day before the assignment had any existence whatever. Those rights were adversary to the rights conferred by the assignment and such adversary character was not illegal. How then can it be said that they are void because of an Act which prohibits preferences *in* assignments, that is, as part of the assignment, when in point of fact they are no part of it, but independent and hostile to it? We cannot see. It is implied from the language of the charge that they can be treated as a preference because the debtors intended by giving them, to prefer the creditors to whom they were given over their other creditors. But that is precisely what we have many times held an insolvent debtor may do so long as he has dominion over his property. The idea is also embodied in the charge that if the judgments were confessed with intent to avoid the law forbidding the preferences, they would be thereby invalidated. But this is not tenable. The Act of 1843 simply prohibits preferences *in assignments*, or rather provides that they shall enure to the benefit of all the creditors. The only question that can arise as to this Act in a given case is, whether the assignment contains a preference. If it does not, that is the end of the controversy. If it does, the preference simply enures to the benefit of all the creditors, and does not in the least avoid the assignment. The Act of 1843 neither prohibits nor makes any provision respecting other transactions done with intent to give a preference. Hence *their* validity depends upon considerations outside of

the Act of 1843. · We think the learned court confounded acts done with intent to hinder, delay and defraud creditors, under the statute of 13th Eliz. with acts done with intent to avoid our law of 1843. But the two classes do not belong in the same category for the simple reason that the Statute of Elizabeth does expressly invalidate acts done with intent to hinder, delay and defraud, while the Act of 1843 contains no such provision. Under the statute the actual fraudulent intent is the material ingredient or occasion of invalidity Under our Act the presence of a preference in a deed of assignment is the essential of invalidity. This distinction is illustrated in another connection in the language heretofore quoted from the opinion of Judge STRONG in York County Bank *v.* Carter, 2 Wr., on p. 453. But the precise point was ruled by this court in Mellon's Appeal, 1 Grant's Cases, 212, where a debtor, at the very time of making a general assignment, though a few minutes before signing the deed, assigned part of a judgment to a creditor whom he desired to prefer. We sustained the preference on the same ground as in the other cases, to wit, that at the time of the transaction the debtor " had the undoubted right to pay such of his creditors as he chose, and this, too, without regard to the effect it would have upon other creditors." Nor can we agree that a mere intent of the debtor, unexpressed to the creditor, to give him a preference by paying or securing the debt although at the time he contemplated, and soon after executed, a general assignment, operated to defeat such preference on the ground that it is contrary to the Act of 1843. Such an intent is not unlawful and cannot be inferred from a proper act. But even if it were, the creditor who has a perfect right to accept payment or security of his debt and has not participated in the alleged unlawful intent, should not be compelled to forfeit his preference on that account. He at least is innocent and may in good conscience hold the advantage he has obtained.

The views we have expressed require us to sustain the 10th, 11th, 12th, 14th and 15th assignments and on them the judgment is reversed. While it is possibly true that the matters covered by the other assignments are immaterial to the issue, yet as there seems to have been a question of actual intent to hinder, delay and defraud, and perhaps some question as to the consideration of the judgments in controversy, we will not reverse on those assignments. As a matter of course the preferences contained in the assignment are nugatory and of no effect. No discussion as to them is necessary.

Judgment reversed and *venire de novo* awarded.