# Werner *v.* Hulda Zierfuss, Appellant.

# Levy & Co. *v.* Hulda Zierfuss, Appellant.

*Conveyance in fraud of creditors—Antecedent debt—Evidence.*

If a creditor takes a judgment, or conveyance, or payment in any form, to secure an actual debt, the transaction will be valid against other creditors, although he knew that the effect would be to postpone the others; that the debtor intended it to have that effect; and although he took it to aid that effect as well as to protect himself. The criterion is not the effect but the fraudulent intent.

It follows that where there is an actual debt the jury cannot be permitted to infer a fraudulent intent from the mere fact of payment or preference given to it.

To impeach the payment or securing of an actual debt there should be evidence tending to show either, first, some advantage or benefit to the debtor beyond the discharge of his obligation; or, secondly, some other benefit to the creditor beyond mere payment of his debt; or, lastly, some injury to the other creditors beyond mere postponement to the debt preferred.

Argued March 8, 1894. Appeals, Nos. 343, 344, Jan. T., 1894, by defendant, from judgment of C. P. Northampton Co., June T., 1893, No. 1, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Feigned issue to determine (1) whether the judgment upon which the execution was issued and the fund in court realized

was given for a bona fide consideration, and (2) whether it was given and used for the purpose of defrauding plaintiffs, creditors of Joseph E. Gross, the execution defendant.

On the trial, before REEDER, J., there was evidence to the effect that Francis Zierfuss loaned money to start Joseph E. Gross in business. The latter became indebted to plaintiffs in the sum of $1,700. He subsequently confessed judgment to Francis Zierfuss for $4,358, which the latter assigned to his wife, the appellant, who issued execution and realized some $2,000, afterwards deposited in court to await the determination of this issue. Defendant's evidence was to the effect that Zierfuss advanced Gross some $3,700 and agreed verbally to become surety for Gross to an amount equal to the balance; that the assignment to the wife was for money borrowed from her. Plaintiffs gave evidence, recited in the opinion of the Supreme Court, to contradict defendant's evidence.

Abraham Levy, one of the plaintiffs, was asked: " Q. What did Joseph Gross say in that conversation before the purchase of the goods, with reference to his ability to pay, and his capital ? " By Mr. Cope : This question is objected to on the ground that it is incompetent and irrelevant, being res inter alios acta, and that it is incumbent upon the plaintiff first to show suspicious circumstances in connection with the condition of the judgment in question and the testimony would only be competent after the plaintiffs had first laid a sufficient ground therefor. By the Court : You propose to follow up this testimony to show that Mrs. Zierfuss was a party to the fraud ? By Mr. Kirkpatrick : Yes. By the Court : The objection is overruled, defendants except and bill sealed. Of course, unless it is followed up by showing that Mrs. Zierfuss was a party to the fraud this evidence would be incompetent and will not be submitted to the jury unless it is followed up by such proof. " A. I asked him the amount of money he was going to start with. By Mr. Kirkpatrick : Q. Had you asked him whether he was going to start in business ? A. Yes ; he told me he had $1,800 of his own money and that his father-in-law owed him $500, and that he would get it at New Year's time." [1]

The court charged in part as follows :

" [The question by which you will determine your verdict is, was this judgment given in consequence of a fraudulent

arrangement between Francis Zierfuss and Joseph E. Gross, for the purpose of defrauding Gross's creditors generally,] [1] or for the purpose of defrauding specifically these two plaintiffs in this action, or was it given in good faith for an existing indebtedness. . . .

" The only view that you can take of it in rendering your verdict is, whether it was a scheme concocted by Francis Zierfuss and Joseph E. Gross, to which Hulda Zierfuss became a party, and, in accordance with that scheme, whether she has given a correct account of what transpired between her and her husband—what was the true character of the transaction—or whether she has given a false statement of that affair, in connection with a conspiracy of fraud between Joseph E. Gross and her husband, to which she became a party.

" [This brings you to the consideration as to whether there was any fraudulent understanding between Francis Zierfuss and Joseph E. Gross. If there was none, then Hulda Zierfuss would be entitled to your verdict; if there was, then the plaintiffs are entitled to your verdict. For the purpose of determining whether there was any such fraud between Francis Zierfuss and Joseph E. Gross, the defendant in the execution, you have a right to take into consideration all the testimony, commencing with the statements made by Joseph E. Gross at the time he purchased these goods, that he had money of his own, and that he borrowed no capital, and the statement which was afterward repeated in their presence, according to the testimony of Lewis Sulke and Lewis Levy, that he was indebted in amounts aggregating in the neighborhood of $2,600 or $2,700, and owed no money for borrowed capital. No matter what Joseph E. Gross may have said to either Lewis Sulke, who was acting for one of the plaintiffs, S. & J. Werner, or to Abraham Levy, who was a member of the firm of A. Levy & Co., it can have no bearing in your minds in the consideration of your verdict, unless you believe Francis Zierfuss was a party to that fraud—knew either at the time or subsequently that he had made such declarations, participated in them, and fraudulently agreed that this judgment should be confessed in order to defeat the creditors of Joseph E. Gross. If you believe that Francis Zierfuss had such knowledge, then they are proper subjects for consideration in your verdict;] [2] if you do not

believe that Francis Zierfuss had any subsequent knowledge
of any such declarations having been made, or if he was not a
party to such declaration, then of course they would have no
consideration in your verdict. . . .

" [Even though Francis Zierfuss may have loaned Joseph E.
Gross these amounts of money he testifies to, even though there
may have been an honest indebtedness for cash advanced to
Joseph E. Gross to the amount of $3,700 by Francis Zierfuss,
yet, if at the time he took this judgment, he took the judgment
for the purpose of assisting Joseph E. Gross to defraud or hin-
der his other creditors, it was a fraudulent judgment, and would
be void, and the plaintiffs would be entitled to your verdict.

" I want you to mark the distinction I propose making in the
law, because it is rather a nice distinction, and sometimes diffi-
cult to a layman.    A man has a right to give another man a
judgment for moneys which he has had of that man ; a man has
a right to take a judgment for his protection.    If either one of
you should loan me large amounts of money, and you saw that
failure on my part was inevitable, you would have the right to
take a judgment from me, and I would have the right to protect
you by giving you a judgment.    The effect of that judgment
would be, of course, to hinder any other creditors and prevent
their getting their money, but I would have the right to do
that, and you would have the right to take the judgment ; but
where a judgment is confessed, not for the purpose of protecting
me, but where the intention is to defeat the other creditors, and
not for the protection of my debt, there the judgment would
be void.

" So, if you believe that this money was honestly loaned and
honestly due from Joseph E. Gross to Francis Zierfuss and the
judgment was confessed by Joseph E. Gross to Francis Zierfuss,
and was confessed by reason of that arrangement between them
that the judgment should be so confessed and execution issued
upon the judgment, if that arrangement was made for the pur-
pose of securing Francis Zierfuss's debt, it would be a good
judgment.    If it was given for the purpose of defeating and
defrauding Joseph Gross's other creditors, and that was the in-
tention of the giving of the judgment, it would be a void judg-
ment, and it would be void in the hands of anybody else for
whom Francis Zierfuss acted as agent, and whose business

he had charge of—so in that case it would be void to Hulda
Zierfuss in the one instance, and it would be good in the oth-
er.] [3] . . . . ”

Defendant's points were as follows :

" 1. The plaintiffs having failed to connect Hulda Zierfuss,
the execution creditor, with the alleged fraudulent acts of
Joseph E. Gross to defraud A. Levy & Co., and S. & J. Wer-
ner by representing to them that he had from $2,000 to $2,500
in cash ; that it was all his own money ; that he owed nothing
for borrowed money, they have not shown such a state of facts
as would make any declarations of the said Joseph E. Gross, in
the absence of Hulda Zierfuss, prior to the giving of the judg-
ment note in question, competent, and therefore the court
should take the question from the jury and submit to them only
the question whether or not there was a good and valid consid-
eration for said judgment note, and whether it was intended to
hinder, delay, or defraud the creditors of Joseph E. Gross.
*Answer:* That point I do not affirm. I deny the point as
qualified by what I said in regard to the law in my general
charge." [4]

" 2. Under the pleadings in this case, the only question for
the jury is whether or not this judgment note was given for
a good and valid consideration, and whether or not it was in-
tended to hinder, delay and defraud the creditors of Joseph E.
Gross, and as all the evidence as to alleged fraudulent acts of
Joseph E. Gross have no connection with the consideration for
the judgment note, nor the giving of the judgment note, it can
throw no light upon the question now at issue, and therefore
the court should take this question from the jury." Refused. [5]

" 3. As it is admitted that Joseph E. Gross gave S. & J.
Werner promissory notes, indorsed by Frank Zierfuss, for the
amount of their claim, and it not being contradicted that the
first of said notes fell due sometime in May, 1893, which was
about a month after the proceedings under the Fraudulent
Debtor's Act were begun by said S. & J. Werner, and it being
admitted that said notes were never surrendered to Joseph E.
Gross, it is for the jury to say whether or not the said S. & J.
Werner thereby agreed to extend the time of payment of their
claim, and if the jury should find that there was such an ex-
tension of time, then as to S. & J. Werner's claim, the proceed-

ings upon which this issue is based were begun before the debt was due, and therefore the said S. & J. Werner have no standing in court." Refused. [6]

*Errors assigned* were (1–6) instructions; (7) ruling; quoting instructions, bill of exception and evidence.

*H. W. Scott, J. B. Kemerer* and *Harry C. Cope* with him, for appellant, cited: Uhler v. Maulfair, 23 Pa. 481; Hutchinson v. McClure, 20 Pa. 63; Covanhovan v. Hart, 21 Pa. 501; Banking Co. v. Fuller, 110 Pa. 163.; Walker v. Bank, 98 Pa. 574; Buckley v. Duff, 114 Pa. 596; Harlan v. Maglaughlin, 90 Pa. 293; Bank v. Tinker, 158 Pa. 17; Mead v. Conroe, 113 Pa. 220; Biddle v. Black, 99 Pa. 380; Walls v. Campbell, 125 Pa. 346; Artman v. Giles, 155 Pa. 415.

*W. S. Kirkpatrick, B. F. McAtee* with him, for appellee, cited: Whiting v. Johnson, 11 S. & R. 328; Gates v. Johnson, 3 Pa. 52; Benson's Ap., 48 Pa. 159; Clark v. Douglass, 62 Pa. 415; Covenhoven v. Hart, 21 Pa. 501; Uhler v. Maulfair, 23 Pa. 483; Ferris v. Irons, 83 Pa. 182; Gans v. Renshaw, 2 Pa. 34; Bunn, Raiguel & Co. v. Ahl, 29 Pa. 387; Kaine v. Weigley, 22 Pa. 183; Schwartz & Graff's Ap., 21 W. N. 246.

OPINION BY MR. JUSTICE MITCHELL, July 11, 1894:

It was said by Chief Justice BLACK in Covanhovan v. Hart, 21 Pa. 495, the leading case in this state on conveyances in fraud of creditors, that "if a debtor with the purpose to cheat his creditors converts his land into money because money is more easily shuffled out of sight than land, he commits a gross fraud," and if the purchaser knowing his object assists in it, "his title is worthless against the creditors although he may have paid a full price." In such case the intent to cheat, common to both parties, enters into the whole transaction and makes it fraudulent from the beginning.

But, as the Chief Justice continues, "The rule is different when property is taken for a debt. One creditor of a failing debtor is not bound to take care of another. It cannot be said that one is defrauded by the payment of another. In such cases if the assets are not large enough to pay all, somebody

must suffer. It is a race in which it is impossible for every one to be foremost. He who has the advantage, whether he gets it by the preference of the debtor, or by his own superior vigilance, is entitled to what he wins, provided he takes no more than his honest due."

To the same effect are Uhler v. Maulfair, 23 Pa. 481; York Co. Bank v. Carter, 38 Pa. 446; Walker v. Marine Bank, 98 Pa. 574, and Lake Shore Banking Co. v. Fuller, 110 Pa. 156; and it may be considered as the established result of our cases that if a creditor takes a judgment, or conveyance, or payment in any form, to secure an actual debt, the transaction will be valid against other creditors, although he knew (1) that the effect would be to postpone the others; (2) that the debtor intended it to have that effect; and (3) although he took it to aid that intent as well as to protect himself. The criterion is not the effect but the fraudulent intent. Without that the transaction cannot be impeached.

A corollary of the foregoing rule is that where there is an actual debt, the jury cannot be permitted to infer a fraudulent intent from the mere fact of payment or preference given to it. Quoting again from Covanhovan v. Hart, " the judge said in his charge that little room is left to attribute fraudulent motives when a debt is actually due from the vendor nearly equal to the value of the property. He should have said there is no room at all. We are not permitted to assign a bad motive to an act which is not wrong in itself or in its necessary consequences." So in York Co. Bank v. Carter, supra, it is said by STRONG, J.: " A jury is not at liberty to deduce fraud from that which the law pronounces honest." See also Bear's Est., 60 Pa. 430, 436.

It would seem to follow necessarily from the foregoing, that where there is payment of an actual debt there can be no question of fraud in fact for the jury without additional evidence of something which may be considered, either in itself or in its connection with the circumstances, a badge of fraud. What evidence will be sufficient for that purpose will of course depend on the circumstances of each case. It may be of excess in amount in a judgment, of inadequate price in a conveyance, of reservation of advantage to the grantor as in Bentz v. Rockey, 69 Pa. 71, or of giving the debtor a weapon to force other

creditors to a compromise, as in Bunn v. Ahl, 29 Pa. 387, or the more common case of delaying or hindering them altogether. The forms and devices of fraud are legion, and it would be vain to attempt to enumerate or define them, but it may be said as a general rule, that to impeach the payment or securing of an actual debt there should be evidence tending to show either, first, some other advantage or benefit to the debtor beyond the discharge of his obligation ; or, secondly, some other benefit to the creditor, beyond mere payment of his debt; or lastly some injury to the other creditors beyond mere postponement to the debt preferred.

Turning now to the case in hand, in the light of these principles, we find that an important if not the principal question was whether there was any bona fide debt of Gross to Zierfuss, or, if any at all, whether it was not very much less than the amount of the judgment. This was submitted to the jury in terms which are not complained of, but the appellant argues strenuously that the judge applied the rule which obtains when the judgment or conveyance is contemporaneous with the payment of the consideration, to the case of a pre-existing bona fide debt, and allowed the jury to find a fraudulent intent from the legal act and its necessary effect. Whether the charge is justly open to this criticism depends on the evidence. The rule given to the jury which is complained of is expressed most tersely in the third assignment of error : " Even though there may have been an honest indebtedness for cash advanced by Zierfuss yet if at the time he took this judgment he took it for the purpose of assisting Gross to defraud or hinder his other creditors, it was a fraudulent judgment and would be void." This was followed immediately by calling the jury's special attention to the distinction between the intent to hinder, and the necessary effect of a preferred payment. The effect, said the learned judge, " would be of course to hinder any other creditors and prevent their getting their money, but I would have the right to do that, and you would have the right to take the judgment; but where a judgment is confessed not for the purpose of protecting me, but where the intention is to defeat the other creditors and not for the protection of my debt, there the judgment would.be void." This is the language of all our cases. None of them afford any basis for the . contention that

payment of an actual debt closes inquiry into the fraudulent in-
tent of such payment, but only that such intent cannot be found
without additional evidence.    Bunn v. Ahl, 29 Pa. 387, was
decided on this exact point.    Was there sufficient evidence
here to justify the submission to the jury ?    As already said
the main contention was that there was no bona fide debt,
or one much less than the judgment.    It was admitted that
the judgment was for more than was actually due, the sur-
plus being claimed to be represented by a contingent liability
as surety, though it was not clear that this was in such form
as to be binding in law.    The facts therefore had to go to the
jury.    The plaintiff's theory was that Zierfuss had loaned Gross
a small amount, just sufficient to enable him to get an initial
credit on which to buy goods ; that even this small amount had
been repaid, but the appearance of debt kept open to meet the
contingency which finally happened.    There was evidence that
Zierfuss was frequently at the store, and kept the run of Gross's
business, making his bank deposits, etc., that he knew Gross
was misrepresenting his assets and his debts, one witness testi-
fying to Zierfuss's presence when Gross made a false statement
to two creditors who were urgent, both as to his debts and as
to his not giving judgments to any one ; and that Zierfuss's
judgment was transferred to his wife, and entered up with
knowledge of the fact that plaintiffs were consulting counsel
with a view to proceeding against Gross.    These facts, while
not perhaps of much weight singly, went to show that the re-
lations of Zierfuss and Gross were very close, and their trans-
actions proper for investigation.    We cannot say that they were
not sufficient to justify the court in putting the whole law on
the subject before the jury.    Whether the verdict was in ac-
cordance with the weight of the evidence is not for us to de-
termine.

The appellant is in no better position than her husband.    If
he was her agent in procuring the judgment she would be bound
by his acts in such matter, and if she took it partly as a gift
and partly for an antecedent debt she would still take it cum
onere.

The point refused in the sixth assignment of errors was bad,
as it assumed facts which were in dispute.    It was not admit-
ted that the Werners had accepted the notes offered them by
Gross.

The trial was upon a feigned issue directed by the court to try the validity of Zierfuss's judgment. No question of the right of the parties, under the case of Artman v. Giles, 155 Pa. 409, to raise that issue, appears upon the record.

Judgment affirmed.