## Dalley's Estate.

*Fraud—Judgment—What constitutes fraud.*

To impeach the payment or security of an actual debt there should be evidence tending to show either, first, some other advantage or benefit to the debtor beyond the discharge of his obligation ; or, secondly, some other benefit to the creditor beyond mere payment of his debt, or lastly, some injury to the other creditors beyond mere postponement to the debt preferred.

*Fraudulent judgment—Husband and wife.*

Where a judgment confessed by a husband to his wife was for an amount due for money borrowed from her long anterior to the confession, the silence or even false statement of the husband to his creditors will not estop the wife from prosecuting her lien in the absence of any evidence showing knowledge on her part that any misrepresentation, by silence or false statement, was made by her husband and of any intent on her part to deceive.

Argued Feb. 13, 1900.  Appeal, No. 4, Feb. T., 1900, by Agnes B. Dalley, from decree of C. P. Lycoming Co., Sept. T., 1897, No. 92, confirming auditor's report in the matter of the account of Anson Underwood, assignee of Jonathan Dalley.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.  Affirmed.  Opinion by W. W. PORTER, J. W. D. PORTER, J., dissents.

Exceptions to auditor's report.  Before MAYER, P J., of the 25th judicial district, specially presiding.

It appears from the record that on June 21, 1897, Jonathan Dalley and his wife Agnes C. executed a deed of assignment. Almost the entire estate of assignor consisted of real estate, and the question arose on the distribution of the fund arising from sale of said real estate.  Among the judgments was one entered July 3, 1896, in favor of Agnes C. Dalley for $500. The auditor found that this judgment was fraudulent as to three subsequent judgments entered in the same month, July, 1896, but that as to several other judgments was not fraudulent and retained its place in priority of lien.

Other facts appear in the opinion of the court.

Exceptions filed to the auditor's report were dismissed. Agnes C. Dalley appealed.

506, (1900).] Assignment of Errors—Opinion of the Court.

*Errors assigned* were (1) in dismissing the first exception to the auditor's report which was as follows : " That the learned auditor erred in his said distribution of the said funds, by rejecting the claim of the said Agnes C. Dalley, on judgment entered to No. 182, September term, 1896, in the court of common pleas of Lycoming county." (3) In dismissing the third exception to the auditor's report, which exception was as follows: " That the learned auditor erred in postponing the claim of the said judgment in favor of Agnes C. Dalley, to the judgments respectively in favor of Mary High, Rachel Curts, and William Bear, administrator. The said judgments, all being entered in point of time subsequent to the date of entry of the aforesaid judgment entered to No. 182, September term, 1896."

*William R. Peoples*, for appellant.—It is well settled law in Pennsylvania " that an honest judgment voluntarily given by a husband to secure a debt owing to his wife is just in law, and where a husband is honestly indebted to his wife and other creditors, he may lawfully confess a judgment in her favor, which will secure her in preference to said creditors:" Benson v. Maxwell, 105 Pa. 274; Breneman's Estate, 150 Pa. 494; Hawley v. Griffith, 187 Pa. 206.

In the appeal of the Manufacturers' National Bank, 2 Penny. 374, it is expressly ruled " that a false declaration as to the amount of liens made by the husband to subsequent lien creditors will not stop her from collecting her mortgage."

*George A. Brown*, for appellee.

OPINION BY WILLIAM W. PORTER J., April 30, 1900 :

Referring to the consideration for the note given by Dalley to his wife, the auditor finds : " That Jonathan Dalley received all or a greater part of this money from his wife is undoubtedly true, but the validity and bona fides of the lien procured therefor is questioned." Again he finds : " The auditor is forced to the conclusion that Jonathan Dalley received this money from his wife, but that he was to repay it with interest is not so well established." Again : " It is evident from these facts that Mr. Dalley was not acting in good faith with his creditors. Was his wife, A. C. Dalley, cognizant of the facts and the acts of her

husband, and did she collude with her husband in this decep-
tion? An examination of her testimony forces the conclusion
that she was lamentably faulty in memory or faithless in intent.
She can remember little that occurred except that she loaned
money to her husband and that he was to repay it with interest.
She lays suspicious emphasis upon the fact that he was to repay
it with interest." Referring to her testimony again, the audi-
tor says that he "is not satisfied of its honesty or her innocence
of the fraud of her husband." He then finds: "From all the
evidence before him, the auditor is satisfied and so finds that
the confession of the judgment by Jonathan Dalley to his wife,
Agnes C. Dalley, was made in 1896, at or near the time the
note was entered of record; that the same was fraudulent and
collusive between Jonathan Dalley and Agnes C. Dalley, the
claimant, and was made and entered in fraud of the creditors
by Jonathan Dalley. For these reasons the claim is postponed
to that of Mary High, Rachel Curts and William Bear, admin-
istrator, in point of priority of lien, upon the fund for distribu-
tion."

In a subsequent part of the report the auditor says: " Mrs.
Dalley has established her claim against her husband's estate
to take effect and position or priority after the claims or liens
of Mary High, Rachel Curts and William Bear, as the auditor
has hereinbefore found, as there is no evidence of a fraud hav-
ing been perpetrated against the claims of the subsequent liens
to those named." From the findings quoted and from the dis-
cussion in the report, it is clear that the debt as between hus-
band and wife was honestly due. There is no finding which
stamps the giving of the note by the husband to the wife with
fraudulent intent as to the creditors generally. No one doubts
that a husband can confess a judgment to his wife for money
borrowed from her, and by this means make her a preferred
creditor, or add to the security of her claim, even though the
claim be held long enough to be barred by the statute of limi-
tations: Wingerd v. Fallon, 95 Pa. 184; Lahr's Appeal, 90
Pa. 507; Benson v. Maxwell, 105 Pa. 274; or include interest
on the loan when there was, in fact, no agreement that the sum
loaned should bear interest: Meckley's Appeal, 102 Pa. 536;
Hawley v. Griffith, 187 Pa. 306. The auditor does not seem
to hold anywhere in his report that the giving of the note was

a fraud, even as to the three creditors he names. His report,. as a whole, is consistent only on the ground that the fraud was. in the use of the note after it was given. This is not, there-- fore, to be regarded as the case of a judgment confessed to a. wife and void for failure of proof of the amount and source of the sum loaned to the husband. It is not ruled by the authori-- ties to this point cited by the appellee. A scrutiny of the evi-- dence has failed to disclose to us any knowledge brought home to the wife of an intention on the part of the husband to hinder or defraud any of his creditors. The auditor's criticisms of her testimony are perhaps warranted, but we are unable to find,. even in the inconsistencies and inaccuracies of that testimony a substantial indication that she was knowingly a party to any act intended to defraud three certain creditors of her husband, and as to the other creditors the auditor specifically finds that. no fraud was committed.

We thus have a confessed judgment by the husband to the wife for money borrowed from her long anterior to the confes-- sion; for an amount honestly due; entered of record nearly a. year previous to any assignment for creditors; and given at a. time when the husband was possessed of property and was then completing negotiations for the purchase of more real estate. The auditor does not put his conclusion upon any finding of fact that the wife had actual knowledge of or participation in an intended or accomplished fraud. He holds, however, that the act of the husband in entering up the judgment note was the act of the wife, and that his acts and knowledge in connec- tion therewith became hers.

There are three creditors of Jonathan Dalley as to whom the auditor finds that the judgment in favor of Agnes C. Dalley is fraudulent. The first is Mary High, to whom Dalley took a. judgment note and agreed to enter it up the same day. He postponed entering it of record until after the entry of the note in favor of his wife. He admits that he was the agent of Mary High for.the purpose of entering the judgment. He was thus entrusted with the entry upon the record of the notes held by both his wife and Mary High. He admits that he agreed to enter up the High judgment note on the same day that he gave it, but does not say, nor is it elsewhere proven, that it was to precede the lien of the judgment in favor of his wife, or take

any particular position in the sequence of liens. He apparently was gratuitously aiding Mary High by giving her the judgment note for a debt he already owed her. He seems to have gone to her with the note. She does not appear (save by counsel) as accusing either of the Dalleys of fraud. She was not called as a witness, and it is out of Dalley's own mouth that it is attempted to convict him and his wife. It may be that he failed in his promise when he delayed entering the judgment as he had agreed, but his act, unknown to his wife, does not taint the judgment held by her with fraud, or relegate it to a junior position.

The auditor also postpones the judgment of Mrs. Dalley to the judgment of Rachel Curts, on the ground of fraud. It appears from the testimony that the judgment note was given to Miss Curts about July 2 and dated July 25. Dalley says that he so dated it in order that this and certain other notes might not " all appear so close together." Apparently, it was a gratuitous act on the part of Dalley to convert his existing indebtedness to Miss Curts into a judgment on July 25. Miss Curts was called as a witness in her own behalf. She does not allege that Dalley represented that the Curts judgment should precede that of his wife. The substance of her testimony is that Dalley did not tell her anything about a judgment to his wife. How can this be regarded as proof of fraud and prejudicial to the right of Mrs. Dalley to priority in her judgment? Miss Curts, who was receiving the judgment note, was not injured by the concealment of the fact of the wife's judgment. Miss Curts obtained a document by which she was enabled to obtain a judgment summarily and within a time presumably less than she could otherwise have obtained it. Futhermore, it would be carrying the doctrine of agency beyond any application yet exhibited by the books to hold that in giving the judgment note to Miss Curts the husband was acting as the agent of his wife, or that any omission to gratuitously call attention to the wife's judgment would estop his wife from asserting its priority.

The judgment of William M. Bear (also given priority) stands in a different position from the other two. About a month before he took the judgment note from Dalley he made an examination of the record to see what incumbrances there

were on Dalley's real estate.   He does not say in distinct terms
that Dalley misrepresented to him the facts in regard to the
incumbrances upon his property on the day the note was given.
Bear's testimony is only: "I asked Mr. Dalley if the docket
was then as when I looked, and he left me under the impression
that it was the same as when I had looked.   On the strength of
that I took the note."   Mr. Rogers, the attorney for Bear, tes-
tifies that Dalley did say that no additional judgments had
been entered.   It has been held, however, in the appeal of the
Manufacturers' National Bank, 2 Pennypacker, 374, that a
false declaration, as to the amount of liens, made by the hus-
band to subsequent creditors, will not estop a wife from claim-
ing upon a lien held by her against his property.   It is said in
that case, that "even if her husband did make a false repre-
sentation to the bank when he obtained the discount, that
surely can be no estoppel to her.   They ought to have sought
information on the subject of the amount of the incumbrances
from the record."

Conceding, as the auditor does, that the judgment held by
the wife was for an amount due, the silence or even false state-
ment of the husband in his transaction with Bear does not es-
top the wife from prosecuting her lien in the absence of any
evidence showing knowledge on her part that any misrepre-
sentation, by silence or by false statement, was made by her
husband and of any intent on her part to deceive.

We are not forgetful of all that this court and the Supreme
Court have said in regard to the effect to be given to the find-
ings of an auditor, nor of the fact that a collusive judgment
may be attacked before and its character determined by him in
the absence of a proper application for an issue: Meckley's
Appeal, 102 Pa. 536.   We cannot better conclude than by
quoting a paragraph from Mr. Justice MITCHELL's opinion in
Werner v. Zierfuss, 162 Pa. 360.   "The forms and devices of
fraud are legion, and it would be vain to attempt to enumerate
or define them, but it may be said as a general rule, that to
impeach the payment or security of an actual debt there should
be evidence tending to show either, first, some other advantage
or benefit to the debtor beyond the discharge of his obligation;
or, secondly, some other benefit to the creditor beyond mere
payment of his debt; or, lastly, some injury to the other credi-

512 DALLEY'S ESTATE.

Opinion of the Court—Dissenting Opinion. [13 Pa. Superior Ct..

tors beyond mere postponement to the debt preferred." None-
of these requisites is found in the present case.

The decree is reversed, and the record remitted to the end
that distribution may be made in accordance with the views.
herein above expressed.

W. D. PORTER, J., dissenting:

That a mere confession of judgment to a bona fide creditor,
by a debtor, for the purpose of giving such creditor a prefer-·
ence, is not invalid as an act done to hinder and delay creditors,
is well settled. The auditor has found as a fact that the judg-·
ment of Agnes C. Dalley against her husband was given for an
honest debt, and that finding eliminates from our inquiry any
question as to the consideration given for the original judg-
ment note. It only remains to be considered whether the.
judgment upon this note was collusively entered by the parties
thereto for the purpose of hindering, delaying and defrauding·
the creditors of the defendant. The mere giving of the judg-
ment for the purpose of preferring the creditor is not sufficient
to sustain a finding of fraud or collusion in the transaction:
Banking Company v. Fuller, 110 Pa. 156. There must be-
additional evidence of something which may be considered,.
either in itself or in its connection with the circumstances, a.
badge of fraud; and what evidence would be sufficient for that·
purpose must, in each case, be dependent upon the peculiar·
circumstances: Bunn v. Ahl, 29 Pa. 387; Werner v. Zierfuss,
162 Pa. 360. There must be something which is a step in the:
process of carrying the fraudulent intention into effect. The:
auditor has found that "the confession of the judgment by
Jonathan Dalley to his wife was made in 1896, at or near the:
time the note was entered of record; that the same was fraud-·
ulent and collusive between Jonathan Dalley and A. C. Dalley,.
the claimant, and was made and entered in fraud of the cred-
itors of Jonathan Dalley." And again: "Third. That from
the statements made by the debtor, Jonathan Dalley, both
before and after he entered the judgment in favor of his wife,
the judgment was fraudulently confessed and given to hinder,
delay and defraud his creditors." We have here specific find-
ings by the auditor that the entry of the judgment was fraud-
ulent and collusive between Jonathan Dalley and the appellant,

and that it was entered to hinder, delay and defraud the creditors of Jonathan Dalley; which findings of fact the learned court below, after a careful examination of the testimony, has approved. When facts are thus found by an auditor and approved by the court below, they are not to be set aside or disregarded unless clearly erroneous. If these findings are sustainable, the judgment, under the statute of 13 Elizabeth, is invalid as to creditors.

Was there sufficient evidence to sustain these findings of fact? The appellant testified that she never had the note upon which this judgment was entered in her possession, or knew of its existence until after the judgment had been confessed upon it, and she fixes the date when judgment was entered upon it as in 1892; her husband testifies that he never delivered this note to his wife, and at first said that he wrote the note in 1892 but subsequently admitted that he might have written it in 1896, at the time he entered judgment upon it. Whether he wrote the note in 1892, and kept it in his possession, without his wife's knowledge, or wrote it in Williamsport at the time he confessed judgment on it, he was at the time he entered that judgment acting as the agent of his wife, his knowledge was her knowledge and his act was her act. When the appellant asserts her rights under this judgment, she must accept the judgment bound by the acts of her agent in the matter. She cannot claim the fruits of his fraud and escape the consequences of the fraudulent act: Werner v. Zierfuss, supra; Hughes v. The Bank, 110 Pa. 428. On July 2, 1896, Jonathan Dalley received from Mary High a judgment note in her favor, made by said Jonathan Dalley, and at that time agreed and undertook to file said note and have judgment entered against himself at the office of the prothonotary in Williamsport on July 3, 1896, and on the day last named he took said note to the office of the prothonotary and instead of entering the High note, as he had agreed, he entered the judgment in favor of his wife, which is now the subject of controversy, and, in violation of his agreement, held the High note until July 6, when he entered judgment upon it. This was an actual fraud upon Mary High, one of his creditors, and the fraud of an agent, in a civil point of view, is the fraud of the principal, so far as to prevent the principal from deriving any benefit from

the fraudulent act: Musser v. Hyde 2 W. & S. 314; Jones v. National Building Association, 94 Pa. 215. At the very time the husband perpetrated this fraud upon Mary High, of which his wife is presumed to have knowledge, he was negotiating with W. N. Bear, administrator, with a view to procuring Bear to satisfy a valid lien which he held on the property of another owner, which land Dalley desired to buy, and to accept instead of said security the judgment note of Dalley. Bear had examined the record on the 1st or 2d of July; on the 3d the judgment in favor of Dalley's wife was entered, and two other judgments were subsequently entered. On the 30th of July, when Bear was induced to release his lien, which was a valid security, upon the property of another owner, and accept Dalley as his debtor, we have it upon the testimony of two witnesses that Dalley assured Bear that the record was in the same condition that it had been at the time Bear examined it. The testimony of the appellant and her husband was so shifting and uncertain as to excite the reasonable suspicions of the auditor and justify his finding that they were acting in collusion throughout the whole transaction. The question is not whether we would have found the same way if we had been in his place, but whether there is evidence sufficient to justify his finding. For these reasons I would affirm the judgment of the learned court below.